UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:21-cv-61617-GAYLES/STRAUSS

**MARCIA MCMANUS**,

    Plaintiff,

v.

**AMERIJET INTERNATIONAL, INC.**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendant Amerijet International, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint and Unopposed Motion to Strike[1] (the "Motion"). [ECF No. 90]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the following reasons, the Motion is **GRANTED**.

## BACKGROUND[2]

Plaintiff Marcia McManus, a black woman of Indian national origin, worked for Defendant Amerijet International, Inc. for nearly twenty-three (23) years until her termination on December 18, 2019. [ECF No. 89 ¶¶ 12, 14]. At the time of her termination, Plaintiff's job title was Crew Planning and Scheduling Manager. *Id.* ¶ 16. In that role, Plaintiff supervised a group of 4–10 employees. *Id.* ¶ 18.

Defendant Amerijet International, Inc. ("Amerijet" or "Defendant") had an agreement with its pilots' union which required that flight crews would be scheduled for their assigned flights at

---

[1] Plaintiff does not oppose Defendant's Motion to the extent that it seeks to strike the Second Amended Complaint's references to the Family and Medical Leave Act and emotional distress.
[2] As the Court is proceeding on a motion to dismiss, it takes Plaintiff's allegations in the Second Amended Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

1

the beginning of each roster period. *Id.* ¶ 20. After the schedule was finalized, Defendant had to pay extra wages to flight crews if they had to fly outside their initially scheduled flights. *Id.* ¶ 21. There was a directive by Defendant's then-CEO, Victor Karijan, to either eliminate or significantly reduce the extra wage "Overages." *Id.* ¶ 22, 25. Plaintiff and three (3) male management employees were responsible for monitoring and mitigating "Crew Scheduling" and Overages: Chief Operating Officer ("COO") Brian Beach, a white male; Director of Operations Steven Mathis, a white male; and Chief Pilot Hector Gonzalez, a non-black male. *Id.* ¶¶ 19, 23.

On August 7, 2019, Plaintiff emailed Karijan, a non-black man of Lebanese descent, requesting a meeting to discuss Overages and the general low morale in her department. *Id.* ¶ 27. On the same day, Beach emailed Mathis and Gonzalez, referring to Plaintiff's email to Karijan and stating, "[t]his is why I need all documentation and items that [Plaintiff] has not done or was in charge of." *Id.* ¶¶ 28–30. After sending her email to Karijan, Plaintiff was written up four times within one month, which was more than she had been written up in her prior twenty-three (23) years of employment. *Id.* ¶¶ 31–32. On September 8, 2019, Plaintiff emailed Isis Suria, the Director of Human Resources, and Joan Canny, the General Counsel, noting that the write-ups started after she requested a meeting with Karijan and that she and other managers were working "under an extremely hostile work environment with Brian Beach." [ECF No. 89-3 at 1]; *See* [ECF No. 89 ¶¶ 33, 34]. Plaintiff did not name the other managers or describe the hostile work environment.

On September 10, 2019, Canny emailed Suria stating her belief that "it would not be appropriate to conduct a separate investigation through [Human Resources]" because Plaintiff "had an opportunity to raise her concerns with [Karijan] today." [ECF No. 89 ¶¶ 36–39]; [ECF No. 89-4]. Therefore, Suria did not investigate Plaintiff's complaint of a hostile work environment. [ECF No. 89 ¶¶ 40–41].

Defendant terminated Plaintiff on December 18, 2019. [*Id.* ¶ 42]. The Personnel Action Form did not list a reason for Plaintiff's termination. *Id.* ¶ 43. On December 26, 2019, Canny emailed Plaintiff and Suria, stating that Plaintiff's employment "was terminated based on a decision to make a change in the position." *Id.* ¶ 44; [ECF No. 89-6].

Plaintiff filed her initial complaint on August 5, 2021, [ECF No. 1], which the Court dismissed for being an impermissible shotgun pleading. [ECF No. 29]. On June 9, 2022, Plaintiff filed a fifteen-count First Amended Complaint ("FAC"). [ECF No. 37]. Defendant moved to dismiss thirteen of the fifteen counts for failure to state a claim. [ECF No. 42]. Plaintiff moved for leave to file a second amended complaint, [ECF No. 82], which the Court granted, [ECF No. 87]. On January 9, 2023, Plaintiff filed a Second Amended Complaint ("SAC") alleging discrimination based on gender and race under Title VII of the Civil Rights Act of 1964 (the "Act"), as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII") (Counts I and II), and the Florida Civil Rights Act ("FCRA") (Counts IV and V); retaliation for protected activity under Title VII (Count III) and the FCRA (Count VI); and retaliation in violation of Florida's Private Sector Whistleblower Act ("Count VII"). [ECF No. 89]. Defendant now moves to dismiss Plaintiff's SAC.

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The pleadings are construed broadly, *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.

1998). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Ultimately, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation and citation omitted).

## DISCUSSION

**I.    Race and Gender Discrimination[3]**

The allegations in Plaintiff's SAC do not plausibly support her race and gender discrimination claims. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). It further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* § 2000e–2(m).[4]

A plaintiff can prove intentional discrimination under Title VII through either direct evidence or circumstantial evidence. *Shannon v. Nat'l R.R. Passenger Corp.*, 774 F. App'x 529,

---

[3] Plaintiff asserts race and gender discrimination claims under Title VII and FCRA. Florida courts apply the same standards of proof and analytical framework to Title VII and FCRA claims. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Accordingly, the Court examines Plaintiff's Title VII and FCRA claims together where appropriate. Applying these standards to the allegations in the SAC, the Court finds that all counts must be dismissed.

[4] The pleading burden under Title VII's "motivating factor" causation standard for employment discrimination claims is lower than the "but-for" causation standard. Under the "motivating factor" standard, a plaintiff must allege a fact from which the court, using common sense and judicial experience, can reasonably infer that a plaintiff's race or gender was a motivating factor in the defendant's challenged action. *Love-Bevelle v. Bessemer City Bd. of Educ.*, No. 19-941-CIV, 2020 WL 13662378, at *4 (N.D. Ala. Aug. 14, 2020) (citing *Iqbal*, 556 U.S. at 679).

4

540 (11th Cir. 2019) (citing *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010)). A *prima face* claim of intentional race or gender discrimination may be proven circumstantially by showing that: (1) she was a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) she was "treated less favorably than a similarly-situated individual outside [her] protected class." *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

While a plaintiff must prove the *prima face* elements at summary judgment or trial, a plaintiff is not required to plead them to survive dismissal. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002). To plead a discrimination claim under Title VII, "a complaint need only 'provide enough factual matter (taken as true) to suggest intentional race [or gender] discrimination.'" *Williams v. Fla. Atl. Univ.*, No. 15-60621-CIV, 2016 WL 1089423, at *5 (S.D. Fla. Mar. 21, 2016) (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015)). However, the *prima facie* claim elements can aid a court in organizing the allegations and identifying any material omissions at the pleading stage. *DiBenedetto v. AT&T Servs., Inc.*, No. 21-04527-CIV, 2022 WL 1682420, at *6 (N.D. Ga. May 19, 2022), *report and recommendation adopted sub nom. DiBenedetto v. AT&T Servs., Inc.*, No. 21-4527-CIV, 2022 WL 18777367 (N.D. Ga. June 6, 2022).

Defendant does not dispute that the first three *prima facia* elements are satisfied because Plaintiff, a black woman, was a member of a protected class, was qualified for her job, and suffered an adverse employment action. However, Defendant disputes the fourth element, arguing that Plaintiff fails to adequately allege that she was treated less favorably than a similarly situated individual outside her protected classes. The Court agrees.

As to the fourth element, a proper comparator should be "similarly situated in all material respects." *Lewis,* 918 F.3d at 1227. Dismissal is appropriate if Plaintiff fails to make a sufficient comparison between herself and the proffered comparators. *See e.g.*, *Arafat v. Sch. Bd. of Broward Cty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (affirming dismissal of action because the plaintiff generically referenced younger males but did not identify any valid comparators to undergird her disparate treatment claims). Generally, a similarly situated comparator "will have (1) engaged in the same basic conduct or misconduct; (2) been subject to the same employment policy, guideline, or rule; (3) ordinarily have the same supervisor; and (4) shared a similar employment or disciplinary history." *Cooper v. Georgia Dep't of Transportation*, 837 F. App'x 657, 667 (11th Cir. 2020) (citing *Lewis*, 918 F.3d at 1227–28).

In the SAC, Plaintiff attempts to use Beach, Mathis, and Gonzalez as comparators but alleges no facts to show that they are similarly situated in all material respects.[5] Other than race and gender differences, the SAC does not allege comparable job conduct, performance, or qualifications between Plaintiff and the alleged comparators. Aside from holding managerial-level positions and having some responsibility for monitoring and mitigating Overages, a reasonable reading of the SAC suggests that Plaintiff, a Crew and Scheduling Manager, had an entirely different position and different duties than Beach, Defendant's COO; Gonzalez, Defendant's Chief Pilot; and Mathis, Defendant's Director of Operations. Indeed, Plaintiff's allegations that Beach caused the hostile work environment, [ECF No. 89-3 at 2], and that Beach sought documentation from Gonzalez and Mathis about Plaintiff's work, [ECF No. 89 ¶¶ 28–30], suggests that Beach, Gonzalez, and Mathis had materially different supervisory positions than Plaintiff. Similarly,

---

[5] Plaintiff fails to do so despite having conducted discovery in this case.

6

Plaintiff fails to allege whether she and the alleged comparators were similarly qualified, shared similar disciplinary histories, or were accused of the same misconduct.

Plaintiff also fails to allege with sufficient particularity that she was treated less favorably because of her race or gender. Plaintiff provides no clear examples of disparate treatment based on race or gender. Rather, Plaintiff broadly alleges that she was treated less favorably than the non-black and male employees because she was written up multiple times and terminated although she consistently received perfect scores on her Personnel Evaluations. However, the Court cannot reasonably infer that Plaintiff's race or gender played a role in her termination simply because her previous performance evaluations were positive. Plaintiff also alleges that, although Beach, Gonzalez, and Mathis were equally responsible for the Overages issues that contributed to Plaintiff's termination, Defendant intentionally chose to only terminate Plaintiff because of her race and gender. Yet, Plaintiff alleges no facts suggesting that racial animus or Plaintiff's gender were motivating factors in Defendant's decision to terminate her.

Altogether, the SAC does not include sufficient factual support to plausibly allege intentional race or gender discrimination. And nothing in Plaintiff's complaint raises a plausible inference that Defendant discriminated against Plaintiff based on her race or gender. *See Henderson v. Dade Cnty. Police Benev. Ass'n, Inc.*, 14-20321-CIV, 2014 WL 3591600, at *8 (S.D. Fla. July 18, 2014) (dismissing discrimination claims where the plaintiff's conclusory assertions that Hispanic males were promoted to the exclusion of African American women were "without factual support as to how each was similarly-situated in all relevant aspects to the Plaintiff" and, were, therefore, "insufficient"). Accordingly, Counts I, II, IV, and V must be dismissed.

II.     **Retaliation**

Moreover, Plaintiff's SAC fails to adequately allege claims for retaliation. To support a claim for retaliation under Title VII and the FCRA, a plaintiff must plausibly allege that (1) she

engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Palmer v. McDonald*, 624 F. App'x 699, 702 (11th Cir. 2015) (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008)).

Plaintiff claims that she engaged in a protected activity when she sent the September 8, 2019, email complaining that she and the other managers were subjected to a hostile work environment. [ECF No. 89 ¶¶ 34, 35, 80, 102]. However, Plaintiff did not describe the hostile work environment or who the other managers were. "It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred." *Webb v. R & B Holding Co., Inc.*, 992 F. Supp. 1382, 1389 (S.D. Fla. 1998)). "[T]he employee must, at the very least, communicate her belief that discrimination is occurring to the employer." *Id.* Plaintiff did not communicate any belief that she or other managers were being discriminated against on any basis. And Plaintiff fails to allege that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Nurse v. City of Alpharetta*, 775 F. App'x 603, 607 (11th Cir. 2019) (quoting *Trask v. Sec'y, Dept. of Veterans Affs.*, 822 F.3d 1179, 1195 (11th Cir. 2016)). Therefore, Plaintiff fails to sufficiently allege that she engaged in a protected activity.

Even if Plaintiff's September 8, 2019, email to Suria and Canny was a protected activity, Plaintiff's retaliation claims fail because she does not plausibly allege a causal connection between that email and her termination. *See Hopkins v. Saint Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 567 (11th Cir. 2010) (affirming dismissal of the plaintiff's retaliation claim because "it founder[ed] on the third requirement to establish a *prima facie* case of retaliation and for that reason fail[ed] to meet *Iqbal's* requirement[s]"). Plaintiff relies, in part, on the three-month period between the email

8

and her December 18, 2019, termination to show a causal link. However, "'in the absence of any other evidence of causation,' a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation." *Boyland v. Corr. Corp. of Am.*, 390 F. App'x 973, 974 (11th Cir. 2010) (quoting *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006)). Therefore, Plaintiff does not plausibly allege unlawful retaliation, and Counts III and VI must be dismissed.

### III.   Florida Private Sector Whistleblower Act

Similarly, Plaintiff fails to sufficiently allege a retaliation claim under Florida's Private Sector Whistleblower Act, § 448.102, Fla. Stat. "[T]o state a claim under the statute, a plaintiff must allege that (1) he or she engaged in a statutorily protected activity; (2) he or she suffered an adverse employment action; and (3) there existed a causal connection between the two events." *Thomas v. Tyco Int'l Mgmt. Co., LLC*, 262 F. Supp. 3d 1328, 1340 (S.D. Fla. 2017).

To satisfy the first element, a plaintiff is "required to show that [she] objected to or refused to participate in (i) an illegal activity, policy, or practice of an employer, (ii) illegal activity of anyone acting within the legitimate scope of their employment, or (iii) illegal activity of an employee that has been ratified by the employer." *Id.* (quoting *Aery v. Wallace Lincoln–Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th DCA 2013)). The employee must have a "good faith, objectively reasonable belief that her activity is protected by the statute." *Aery*, 118 So. 3d at 916 (quoting *Luna v. Walgreen Co.*, 575 F. Supp. 2d 1326, 1343 (S.D. Fla. 2008)).

Because the standards governing a Title VII retaliation claim apply to a retaliation claim under the Florida Private Sector Whistleblower Act, Plaintiff fails to show that she engaged in a statutorily protected activity for the reasons explained above. *See Butterfield v. JetBlue Airways Corp.*, No. 20-13473-CIV, 2022 WL 291003, at *5 (11th Cir. Feb. 1, 2022). Plaintiff does not allege that she "[o]bjected to, or refused to participate in, any activity, policy, or practice of the

employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102. It is not enough for Plaintiff to merely claim that she was subjected to a hostile work environment without identifying or describing the hostile work environment.

Similarly, because Plaintiff does not sufficiently allege a causal connection between her September 8, 2019, email, and her termination, for the reasons explained above, the Court finds that Plaintiff's allegations are too conclusory to establish her claim for retaliation under the Florida Private Whistleblower Act. Accordingly, Count VII must also be dismissed.

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion, [ECF No. 90], is hereby **GRANTED.**

2. The Second Amended Complaint, [ECF No. 89], shall be **DISMISSED with prejudice**.[6]

3. All pending motions are **DENIED as moot**.

4. This case is **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of September, 2023.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge M. Strauss
All Counsel of Record

---

[6] "A district court need not . . . allow an amendment . . . where there has been . . . repeated failure to cure deficiencies by amendments previously allowed . . . [or] where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Plaintiff has had the benefit of extensive discovery and three opportunities to amend her complaint and cure any pleading deficiencies, yet Plaintiff's SAC remains vague and conclusory. *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1057 (11th Cir. 2015) ("Three attempts at proper pleading are enough."). Therefore, this case shall be dismissed with prejudice.