UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-61617-GAYLES/STRAUSS

MARCIA MCMANUS,

     Plaintiff,

v.

AMERIJET INTERNATIONAL, INC.,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendant's Verified Motion for Award of Attorney and Professional Fees ("Motion") [DE 127], which has been referred to me [DE 131].[1] I have reviewed and considered the Motion, the Response [DE 129] and Reply [DE 132] thereto, all attachments to the foregoing filings (including declarations from the parties' respective experts), briefing on the dispositive motions filed in this case (i.e., the briefing on Defendant's motions to dismiss and motion for summary judgment), and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 127] be **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

Plaintiff commenced this discrimination and retaliation action against her former employer (Defendant) following Defendant's termination of her employment.[2] At the time of her

---

[1] I am issuing a Report and Recommendation on the Motion because the Motion is treated as dispositive. *See* Fed. R. Civ. P. 54(d)(2)(D) (providing that the court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter").

[2] In the different iterations of her Complaint, Plaintiff included claims under the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title

termination (on December 18, 2019), Plaintiff worked for Defendant as its Crew Planning and Scheduling Manager.  She worked for Defendant for approximately 23 years.

Plaintiff filed her initial Complaint [DE 1] in this action on August 5, 2021.  The Court subsequently granted a motion to dismiss Plaintiff's initial Complaint, dismissing the Complaint without prejudice on the ground that it was an impermissible shotgun pleading.  [DE 29].  On June 9, 2022, Plaintiff filed a first Amended Complaint ("FAC") [DE 37].  Defendant again filed a motion to dismiss.  However, while that motion was pending, Plaintiff filed a Second Amended Complaint ("SAC") [DE 89], on January 9, 2023.  Thereafter, Defendant moved to dismiss the SAC, and after full briefing, the Court granted Defendant's motion, dismissing this case with prejudice.  [DE 122].  The following chart reflects the claims included in the different versions of Plaintiff's complaints:

| Count | Complaint | Amended Complaint | Second Amended Complaint |
|---|---|---|---|
| 1 | ADEA | Discrim. (ADEA) | Gender Discrim. (Title VII) |
| 2 | Discrim. (Title VII) | Retaliation (ADEA) | Race Discrim. (Title VII) |
| 3 | Discrim. (FCRA) | Sex Discrim. (Title VII) | Retaliation (Title VII) |
| 4 | FMLA | Color Discrim. (Title VII) | Sex Discrim. (FCRA) |
| 5 | FWA | Race Discrim. (Title VII) | Race Discrim. (FCRA) |
| 6 | | Nat'l Origin Discrim. (Title VII) | Retaliation (FCRA) |
| 7 | | Retaliation (Title VII) | FWA |
| 8 | | Age Discrim. (FCRA) | |
| 9 | | Sex Discrim. (FCRA) | |
| 10 | | Color Discrim. (FCRA) | |
| 11 | | Race Discrim. (FCRA) | |
| 12 | | Nat'l Origin Discrim. (FCRA) | |
| 13 | | Retaliation (FCRA) | |
| 14 | | FMLA | |
| 15 | | FWA | |

---

VII"), the Florida Civil Rights Act ("FCRA"), the Family Medical Leave Act ("FMLA"), and the Florida Whistleblower Act ("FWA").

In its dismissal order, the Court divided its discussion into three parts.  First, the Court explained that Plaintiff's race and gender discriminations claims (under Title VII and the FCRA) failed to state a claim because the SAC did not include sufficient facts to plausibly allege intentional race or gender discrimination.  [DE 122] at 4-7.  The Court further noted that nothing in Plaintiff's SAC raised a plausible inference that Defendant discriminated against Plaintiff based on her race or gender.  *Id.* at 7.  Second, the Court explained that Plaintiff's retaliation claims (under Title VII and the FCRA) failed because Plaintiff failed to sufficiently allege that she engaged in protected activity, and that even if she had adequately alleged protected activity, she failed to plausibly allege that a causal connection existed between the alleged protected activity she pointed to – a September 8, 2019 email – and her termination.  *Id.* at 7-9.  Third, the Court explained that Plaintiff's FWA claim failed for the same reasons as her retaliation claim.  *Id.* at 9-10; *see also Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 858 (11th Cir. 2023) ("An FPWA claim is analyzed under the same standards as a Title VII retaliation claim.").

Defendant brings its request for fees under the FWA's fee provision.  In dismissing Plaintiff's FWA claim, the Court first noted that Plaintiff was required to "allege that (1) he or she engaged in a statutorily protected activity; (2) he or she suffered an adverse employment action; and (3) there existed a causal connection between the two events."  [DE 122] at 9 (citation omitted).[3]  As indicated above, the Court explained that Plaintiff's FWA and retaliation claims failed on both the first and third elements.

With respect to Plaintiff's alleged protected activity, Plaintiff alleged that she engaged in protected activity by sending a September 8, 2019 email [DE 89-3] complaining about a "hostile

---

[3] *See also Ounjian*, 89 F.4th at 858 ("[T]he elements of an FPWA claim are: (1) protected activity, (2) a retaliatory personnel action and (3) a causal connection between the two." (citations omitted)).

work environment." In that email (to Human Resources and General Counsel), Plaintiff stated, *inter alia*, that:[4] (1) she was "working under an extremely hostile environment with Brian Beach" and that "[t]his is also happening to other managers"; (2) "Every time I am being written up, I am being told they were directed to do it"; (3) "previously Ed complained about Brian bullying and a few months later, he was terminated for another reason"; (4) "passive aggressive bullying and harassment should not be allowed in the work place"; (5) "I knew when I decided to speak up from the incident with Steve a few months ago, there was a possibility it will either improve the work environment . . . or I may be terminated . . . for some unrelated reason"; (6) "Brian keeps a personal vendetta against me but continue[s] to show favoritism to others"; and (7) "I have never experience[d] this type of hostile work place before." [DE 89-3].

The Court explained that Plaintiff's email was not protected activity because "Plaintiff did not describe the hostile work environment or who the other managers were," that "[i]t is not enough for Plaintiff to merely claim that she was subjected to a hostile work environment without identifying or describing the hostile work environment," and that "Plaintiff did not communicate any belief that she or other managers were being discriminated against on any basis." [DE 122] at 8-10. The Court additionally noted that "Plaintiff fail[ed] to allege that 'the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Id.* at 8 (citation omitted). As to the causal connection element, the Court found that Plaintiff's allegation of causation, which was primarily premised upon temporal proximity –

---

[4] The portions I am noting here are primarily those that Plaintiff underlined in the email (apparently emphasizing those portions).

there was roughly 3.5 months between Plaintiff's email and termination – was not plausible.  *See id.* at 8-10.

In light of the dismissal with prejudice of Plaintiff's claims, Defendant clearly prevailed in this action.  Pursuant to the Motion, Defendant now seeks an award of attorneys' fees against Plaintiff.  Defendant contends that it is entitled to an award of fees under section 448.104 of the Florida Statutes against Plaintiff (given that it prevailed on Plaintiff's FWA claim).  As discussed herein, the Court has discretion to grant or deny an award fees under the FWA, and here, I recommend that the Court grant an award of fees, albeit one that is more limited than the award Defendant seeks.

## <u>ANALYSIS</u>

### A.  ENTITLEMENT

This Court should award fees to Defendant under the FWA.  Under the FWA, "[a] court may award reasonable attorney's fees, court costs, and expenses to the prevailing party."  § 448.104, Fla. Stat.  Such an award is discretionary, not mandatory.  *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1259 (11th Cir. 2014); *Barnhart*, 523 F. App'x at 640; *New World Commc'ns of Tampa, Inc. v. Akre*, 866 So. 2d 1231, 1235 (Fla. 2d DCA 2003).  "Neither the FWA nor its legislative history indicates what, if anything, should guide a court's discretion in awarding fees."  *Smith*, 750 F.3d at 1259.  However, district courts in this circuit have considered the following non-exhaustive factors in deciding whether to award fees under the FWA:

> (1) the scope and history of the litigation, including whether the Plaintiff continued to prosecute the action despite the presence of an efficient resolution to the case; (2) the parties' wealth disparity; (3) whether an award of fees would frustrate the FWA's remedial purpose by deterring worthy claimants; (4) whether the opposing

party's case was meritorious or frivolous;[5] and (5) whether the opposing party
acted in good or bad faith.

*Blanco v. TransAtlantic Bank*, No. 07-20303-CIV, 2009 WL 2762361, at *2 (S.D. Fla. Aug. 31,

2009) (footnotes omitted); *see also Li v. Roger Holler Chevrolet Co.*, No. 6:19-CV-1249-GAP-

EJK, 2021 WL 5769034, at *2 (M.D. Fla. Dec. 6, 2021); *Dawodu v. DHL Express, (USA), Inc.*,

No. 18-24587-CIV, 2019 WL 13255530, at *2 (S.D. Fla. June 6, 2019), *report and

recommendation adopted*, 2019 WL 13255540 (S.D. Fla. July 1, 2019); *Bourhis v. MY Trade LLC*,

No. 15-22674-CIV, 2017 WL 10399269, at *2 (S.D. Fla. Mar. 10, 2017) (collecting cases).  The

Eleventh Circuit has not expressly adopted or rejected the foregoing five-factor test, but it has

deferred to district courts' use of the test, noting that "[t]rial courts are in a better position than

appellate courts to assess whether fees are appropriate in a given case."  *Smith*, 750 F.3d at 1259.

As discussed herein, I find that, four of the five factors set forth above favor an award of

fees to Defendant (to at least some degree), while the fifth factor does not strongly weigh in favor

of or against a fee award.

### 1.  Scope and History of Litigation

This factor weighs in favor of a fee award, although not as strongly as Defendant asserts.

Defendant argues that the scope and history of this litigation favors a fee award because (1)

"Plaintiff gave various and conflicting reasons supporting her FWA claim," and (2) "Plaintiff

continued to purse [sic] her claims despite multiple opportunities to resolve the case, including

walking away from settlement negotiations despite have [sic] a substantial offer on the table form

---

[5] While this is one of the factors courts have considered, simply because a plaintiff brought a non-frivolous FWA claim does not prevent a prevailing defendant from recovering attorneys' fees under the FWA.  *See New World Commc'ns*, 866 So. 2d at 1235 (rejecting the contention that fees should only be awarded to a prevailing defendant under the FWA when a plaintiff's case is "frivolous, unreasonable, or without foundation").

[sic] Amerijet." [DE 127] at 3-4. I agree with Defendant regarding Plaintiff's changing theories but cannot adequately assess, based on the information provided, whether the parties' conduct regarding settlement also favors an award of fees.

Regarding the issue of settlement, Defendant contends that Plaintiff did not take advantage of opportunities to settle the case and instead terminated settlement negotiations. According to Defendant, it made settlement offers in good faith, but Plaintiff made "unreasonably high demands" exceeding her best day in court. Defendant indicates that Plaintiff refused to make counteroffers on several occasions notwithstanding the fact that Defendant did not present its offers as best and final. Plaintiff responds that Defendant is effectively complaining that Plaintiff would not settle, and Plaintiff points out that both sides made offers. Ultimately, neither side provides sufficient information to evaluate whether an efficient resolution was on the table. Had Plaintiff never made any offers or countered any of Defendant's offers, the situation may be different. However, as Plaintiff notes, both sides engaged in settlement discussions and made offers and counteroffers (at least at certain points during the litigation). Without more information regarding the offers provided (including amounts), the Court cannot find that the "efficient resolution" component of the first factor favors either party here.

As to Defendant's argument regarding Plaintiff's changing theories throughout the litigation, Defendant points out that neither the FWA claim in Plaintiff's initial Complaint nor the FWA claim in the FAC were premised upon the same protected activity as the FWA claim in Plaintiff's SAC. In fact, it is unclear from Plaintiff's initial Complaint what protected activity was at issue, and in Plaintiff's FAC, Plaintiff's alleged protected activity involved Plaintiff making a complaint concerning pilot safety violations and FAA compliance. *See* [DE 1] ¶¶ 183-92; [DE 37] ¶¶ 253-74. Defendant also notes that Plaintiff likewise confirmed at her deposition that her

FWA claim in the FAC pertained to this pilot safety issue.  *See* [DE 103-6] at 187-92.

Nevertheless, Defendant points out, just a month and a half after Plaintiff's deposition, Plaintiff

filed her SAC, scrapping her allegations regarding pilot safety complaints, and instead alleging

that the protected activity she was fired for engaging in was the September 8, 2019 email in which

she complained about a hostile work environment.  Defendant contends that Plaintiff's "last minute

shift in her allegations, nearly a year and a half after Plaintiff filed her original complaint, is

indicative of bad faith, particularly since it occurred after the close of discovery when it became

patently clear that there was no evidence to support her claim."  [DE 127] at 4-5.

Plaintiff, on the other hand, argues that the scope and history of the litigation weigh against

an award of fees.  Plaintiff asserts that she acted in good faith by filing the SAC in January 2023.

Plaintiff notes that not only did she drop most of her claims (8 of 15 counts), but that she amended

her Complaint in large part due to deposition testimony that she obtained in December 2022 from

various officers and managerial employees of Defendant.  According to Plaintiff, that testimony

shed light on various issues, including issues of pretext.  Defendant replies by arguing that

Plaintiff's Response fails to explain precisely what new evidence gave rise to her amended

whistleblower claim, and Defendant contends that the depositions from late 2022 instead revealed

that Plaintiff had not engaged in protected activity and that she did not have a viable whistleblower

claim.  For instance, Defendant notes Plaintiff's acknowledgement at her deposition that she did

not say anything about discrimination in her September 8, 2019 email to Human Resources.  *See*

[DE 103-6] at 196-97.

Overall, I find that the scope and history of the litigation favors an award of fees, at least

from the time Plaintiff filed her SAC (i.e., when she introduced a new FWA theory).  As Defendant

contends, by the time Plaintiff filed her SAC, she had already had the opportunity to not only take

some discovery, but *complete* discovery.   In many similar cases, litigants whose cases are dismissed at the motion-to-dismiss stage do not have the same opportunity to complete discovery prior to dismissal.   Moreover, Plaintiff filed her SAC nearly a year and a half after filing her initial Complaint, and she did so after full briefing had been completed on motions to dismiss both the initial Complaint and FAC.   The fact that Plaintiff was still unable to survive a motion to dismiss despite filing her SAC after the completion of discovery, and after full briefing on two prior motions to dismiss, favors an award of fees (at least those incurred following the filing of Plaintiff's SAC).

One additional issue related to discovery also favors an award of fees.   That is, Defendant was substantially more reasonable in connection with discovery disputes raised with the Court.   During the course of the litigation, both parties sought Court intervention on discovery disputes.   When Defendant did so, I granted a large portion of what it was seeking, while at the same time narrowing many requests.   *See* [DE 24].   What was more problematic were many of the issues on which Plaintiff sought Court intervention.   As an initial matter, she failed to do so in a timely manner.   *See* [DE 41].   Moreover, as I noted at the time (albeit without definitively deciding the issue), many of Defendant's objections to Plaintiff's discovery requests appeared meritorious.   *See id.* at 5 n.5.   Ultimately, I only ordered Defendant to produce documents it previously indicated it would produce but had not yet produced.   *See* [DE 52].

To be clear, the parties' discovery-related conduct is only one small part of my consideration of the first factor (scope and history of litigation).   But as a whole (even without considering the discovery issues), the first factor favors Defendant for the reasons discussed above (albeit not to the degree suggested by Defendant given that the efficient resolution aspect of the factor favors neither party based on the information provided).

2. **Wealth Disparity**

Based on the parties' briefing, this factor at least somewhat supports an award of fees – or, at the very least, does not weigh against an award.  Defendant argues that Plaintiff and her husband are wealthy, noting that: (1) Plaintiff's husband is an airline pilot with an annual salary exceeding $600,000; (2) Plaintiff and her husband jointly own three homes; and (3) Plaintiff owns an additional townhome, which she rents out.  Regarding her husband's salary and her financial circumstances, Plaintiff sent herself two emails in 2019 (while still employed by Defendant).  In the first email, Plaintiff stated:

> Well if they eliminate my position at least my lifestyle would not change because my husband is a Captain at [an] airline and makes over 600K a year --- but --- I really enjoyed being independent and making my own salary. That would be the sad part. You can take away my job but not my life style because my husband pays all the bills --- my salary was only my spending money.

In the second email, after noting that her supervisors indicated she (and others) would be looking for jobs if they failed to reduce pilot overages, Plaintiff stated that she told them her husband is an airline captain, that she does not need to work, that she can be a housewife, and that the taxes she and her husband pay exceed her salary.

In her Response, Plaintiff states that her emails merely indicate that she would be financially stable and nothing more.  Additionally, Plaintiff asserts that she rents out certain real estate to pay mortgages on the real estate and that the properties have expenses she has to account for when the properties are vacant.  Ultimately, Plaintiff contends that she is not "wealthy," whereas Defendant is a large company with substantial resources.

However, as Defendant points out, the "wealth disparity" factor should not purely rise or fall on whether an employer is wealthier than an employee.  After all, if it did, then the factor would almost universally weigh against an award of fees to a prevailing employer-defendant given

that virtually all employer-defendants are going to be wealthier than the employee-plaintiff in this context.  Rather, a court's analysis of this factor should be most concerned with "the potential danger that a disparity in wealth will crush a financially-weak party."  *Dawodu*, 2019 WL 13255530, at *4 (citing *Bell v. Ga.-Pac. Corp.*, 2005 WL 1618223, at *1 (M.D. Fla. July 6, 2005)). In other words, courts should consider wealth "*to avoid impoverishing an individual or unfairly punishing her for exercising the right to seek legal redress*," but courts should not "penalize a corporation simply because it has greater resources." *Id.* (quoting *Smith v. Psychiatric Sols., Inc.*, 864 F. Supp. 2d 1241, 1265 (N.D. Fla. 2012) (emphasis added)).

Here, even assuming that Defendant has greater financial resources than Plaintiff, the fact is that Plaintiff does appear to have above-average wealth.  And significantly, Plaintiff has not shown (or even argued) that a fee award would be financially crippling.  In fact, Plaintiff has not even suggested that a fee award would deplete a sizeable portion of her assets or wealth.  At any rate, while I do not find that this factor on its own supports the Court exercising its discretion to award fees, Plaintiff has not shown – in the face of the information that Defendant provides regarding Plaintiff's wealth – that the Court should not award fees, or that the Court should limit any fee award, based on Plaintiff's financial resources.

### 3.  **Frivolity**

Plaintiff's FWA claim (in the SAC) was not meritorious; at best, it was borderline-frivolous.  Defendant raises a few arguments in support of its contention that Plaintiff's case was frivolous.  First, Defendant contends that Plaintiff failed to state a claim even though she had the opportunity to *complete* discovery before filing her SAC.  Defendant asserts – and Plaintiff does not dispute – that by the time Plaintiff filed her SAC, Plaintiff deposed five current and former employees of Defendant, and Defendant had produced nearly 6,000 pages of documents.  Second,

Defendant asserts that although discovery was completed, Plaintiff failed to present any evidence that Defendant violated any law, rule, or regulation.  *See Ounjian*, 89 F.4th at 858 (noting that the FWA prohibits employers "from taking a 'retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in,' conduct that violates a law, rule, or regulation." (quoting § 448.102(3), Fla. Stat.)).  Third, Defendant asserts that Plaintiff failed to provide evidence that she engaged in protected activity.  Lastly, Defendant takes issue with the manner in which Plaintiff answered certain questions at deposition and asserts that Plaintiff moved forward with claims that were clearly frivolous when she should have abandoned them.

In response, Plaintiff argues that her FWA claim had arguable merit.  She asserts that she reasonably believed she and others were subjected to a hostile work environment as stated in her September 8, 2019 email to Human Resources.  Plaintiff further notes that she learned during discovery that Defendant's General Counsel told Human Resources not to investigate Plaintiff's hostile-work-environment complaint.  Additionally, Plaintiff argues that merely because she lost at the motion-to-dismiss stage does not render her claim frivolous.  In its reply, Defendant argues, *inter alia*, that even if Plaintiff reasonably believed that she and others were being subjected to a hostile work environment, that is not the same as being subjected to a hostile work environment based on *race*, *national origin*, *or gender*, which Defendant asserts is what Plaintiff would need to prove in connection with her retaliation and FWA claims.

The foregoing point from Defendant's reply is significant.  In other words, what makes Plaintiff's FWA claim in the SAC at least borderline-frivolous (if not frivolous) is her allegation that she engaged in statutorily protected activity.  Plaintiff seems to overlook the fact that, as a matter of law, "[u]nfair treatment, absent discrimination based on race, sex, or national origin, is

*not* an unlawful employment practice under Title VII." *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).  Thus, "[c]omplaints of unfair treatment, absent evidence of race-, sex-, or national-origin-based discriminatory animus do not constitute protected activity for Title VII retaliation." *Kelly v. Dun & Bradstreet, Inc.*, 641 F. App'x 922, 923-24 (11th Cir. 2016).[6]  And Plaintiff's September 8, 2019 email said nothing about being unfairly treated, bullied, or harassed *on account of her race or sex (or any other protected ground).*[7]  "Absent any allegation about discrimination based on a protected ground, Plaintiff's grievances alleging unfair treatment were not statutorily-protected conduct." *Bowens v. Escambia Cnty. Bd. of Educ.*, No. 22-11560, 2023 WL 4145424, at *4 (11th Cir. June 23, 2023).[8]  Thus, Plaintiff's contention that her September 8, 2019 email constituted protected activity was without merit.  Therefore, the factor considering whether Plaintiff's FWA claim was frivolous or meritorious weighs in Defendant's

---

[6] As noted above, FWA claims are "analyzed under the same standards as" Title VII retaliation claims. *Ounjian*, 89 F.4th at 858.

[7] In fact, as Defendant has pointed out, Plaintiff's September 8, 2019 email also references "Ed" having complained about bullying, but Ed is neither the same race nor gender as Plaintiff; he is a white male. *See* [DE 102] ¶¶ 99-100; [DE 107] ¶¶ 99-100.

[8] *See also Suber v. Lowes Home Ctrs.*, 845 F. App'x 899, 900 (11th Cir. 2021) (finding that email making generic allegations of unfair treatment without alleging discrimination based on a protected characteristic was not protected activity); *Ceus v. City of Tampa*, 803 F. App'x 235, 246 (11th Cir. 2020) ("Ceus's January 2014 email requesting a meeting was also not protected activity because it did not mention race or discrimination, as Ceus admits, but merely the unfair treatment of 'bullying.'"); *Blow v. Virginia Coll.*, 619 F. App'x 859, 863-64 (11th Cir. 2015); *Hawk v. Atl. Peach Movers*, 469 F. App'x 783, 785-86 (11th Cir. 2012); *Birdyshaw v. Dillard's Inc.*, 308 F. App'x 431, 436-37 (11th Cir. 2009).  Florida courts have similarly found that complaints that do not explain how an employer discriminated based on a *protected characteristic* are insufficient to sustain a claim under Florida's public whistleblower statute. *See Broward Cnty. Sheriff's Off. v. Hamby*, 300 So. 3d 213, 216-17 (Fla. 4th DCA 2020); *Nazzal v. Fla. Dep't of Corr.*, 267 So. 3d 1094, 1097-98 (Fla. 1st DCA 2019) (rejecting argument that plaintiff engaged in statutorily protected activity by complaining that she was "subjected to disparate treatment which is in direct violation of the 1964 civil rights act" because plaintiff "did not elaborate on how (or by whom) she was treated disparately *or how any such disparate treatment was based on a protected characteristic such as her national origin*" (emphasis added)).

favor to at least some degree.[9]  At the very least, it favors an award of fees incurred in connection with Plaintiff's new FWA claim – i.e., the meritless FWA claim Plaintiff asserted when she filed her SAC.

### 4.  **Deterrence of Worthy Claimants**

I find that a fee award would not substantially frustrate the FWA's remedial purpose by deterring worthy claimants, at least not if it is limited to fees incurred in connection with Plaintiff's FWA claim following the filing of the SAC.  In addressing this factor, the parties largely reiterate other arguments they have raised regarding other factors such as frivolity and bad faith.  And I agree that those arguments are relevant to analyzing this factor in the context of this case.  As Defendant notes, pointing to case law in this district:

> Meritless claims undermine a remedial statute, just as one bad apple can spoil a barrel. In fact, awarding attorneys' fees to Defendant might actually promote the remedial purpose of the Whistleblower Act by discouraging meritless claims. As such, a fee award would not frustrate the statute's remedial purpose . . . because when a plaintiff files a meritless claim, he undermines legitimate claims by clogging the courts, wasting private resources, and diminishing the importance of protecting bona fide whistle blowers.

*Dawodu*, 2019 WL 13255530, at *4 (internal citations and quotation marks omitted) (cleaned up).

Here, as discussed above, Plaintiff filed her SAC after having the opportunity to complete discovery.  When she did so – a year and half into the case – she completely changed the theory of her FWA claim.  But notwithstanding the fact that Plaintiff had the benefit of completing discovery before filing her SAC, she could not state a claim under the FWA, and her SAC was

---

[9] The parties' briefing largely addresses the frivolity and bad faith factors together, without really drawing any significant distinctions between the two factors in the context of this case.  Overall, I do not find the parties' arguments overwhelming regarding whether Plaintiff acted in bad faith or good faith.  In other words, some of Plaintiff's actions suggest good faith (e.g., dropping several claims) and others do not (e.g., introducing a new, meritless FWA theory in her SAC a year and a half into the case).  Therefore, I do not find that this factor (good faith versus bad faith) materially affects the calculus here on whether the Court should exercise its discretion to award fees.

dismissed with prejudice.  Plaintiff could not state such a claim because she was unable to plausibly allege two of the three elements of a prima facie case.  And her contention regarding at least one of those elements (statutorily protected activity) was meritless for the reasons discussed above. Moreover, Plaintiff should have been able to determine that her claim was meritless based on existing case law.  After all, Plaintiff sent the September 8, 2019 email (her alleged protected activity) and had that email in her possession when she filed the SAC (in fact, the email is attached as an exhibit to the SAC).  Nonetheless, Plaintiff pressed forward with her new, meritless FWA claim.  Under the circumstances of this case, a reasonable fee award is not like to deter worthy claimants, especially if fees are only awarded for time incurred since the filing of the SAC.

## B. REASONABLE FEE AWARD

When determining the reasonableness of attorney's fees, courts begin by multiplying a reasonable hourly rate by the number of hours reasonably expended.  *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The result of that calculation is known as the lodestar, s*ee id.* at 1301-02, which is "strongly presumed to be reasonable."  *Rodriguez v. Molina Healthcare Inc.*, 806 F. App'x 797, 804 (11th Cir. 2020) (citations omitted).

The party seeking an award of fees has the burden of documenting the hours incurred and the applicable hourly rates.  *Norman*, 836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 437).  Fee applicants are required to exercise billing judgment and to exclude entries that are excessive, redundant, or otherwise unnecessary.  *Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (citing *Hensley*, 461 U.S. at 434).  Entries for clerical or administrative tasks should also be excluded.  *See Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) ("Purely clerical or secretarial tasks that require no legal skill or training,

such as converting pleadings to PDF, faxing and mailing, updating lists and calendars, and filing or e-filing documents, should not be billed at a paralegal rate regardless of who performs them." (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999))).

It is axiomatic that hours that are unreasonable to bill to one's client are unreasonable to bill to an adversary, "*irrespective of the skill, reputation or experience of counsel*." *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301). If fee applicants fail to exercise billing judgment, courts must do it for them. *Id.* A court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (citations omitted).

Courts reviewing fee applications "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Consequently, "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)).

Here, Defendant seeks an award of $119,675.33 in attorneys' fees.  Although Defendant incurred $359,026 in attorneys' fees in this matter,[10] it is only seeking one-third of that amount given that its request for fees is only brought under the FWA.  While Plaintiff's FWA claim only accounted for one of the seven counts in the SAC, Defendant contends that Plaintiff's FWA claim and other retaliation claims are inextricably intertwined.  Plaintiff does not appear to dispute this contention.  Plaintiff also does not dispute that Defendant's suggestion of awarding one-third of Defendant's reasonable attorneys' fees would be acceptable *if Defendant is entitled to attorneys' fees*.  But Plaintiff vehemently disputes entitlement and further contends that certain of the hours Defendant's attorneys billed are unreasonable.  Specifically, Plaintiff contends that the starting figure (i.e., the lodestar) should be reduced from $359,026 to no more than $306,306, and thus, that Defendant, if entitled to fees, should only be awarded a maximum of $102,102 (one-third of $306,306).

I see things a bit differently than both sides.  What should be evident from my entitlement discussion above is that it is appropriate for the Court to exercise its discretion to award reasonable attorneys' fees incurred since Plaintiff filed her SAC (on January 9, 2023).  Defendant's central argument for an award of fees seems to be premised on the fact that Plaintiff changed her FWA theory a year and a half into the case, after discovery was completed, and that Plaintiff's new FWA

---

[10] Defendant indicates in the Motion that it incurred $371,860 in attorneys' fees.  However, it is only seeking time billed by four timekeepers (and has excluded time billed by others) in arriving at the $359,026 amount.  The $359,026 amount is comprised of the following:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Robert S. Turk | 225.2 | $350 | $78,820 |
| Paul Crucet | 845.1 | $260 | $219,726 |
| Thomas Raine | 109.6 | $260 | $28,496 |
| Carolina A. Oquendo | 199.9 | $160 | $31,984 |
| Total | | | $359,026 |

claim was meritless.  As discussed above, Defendant's argument is well-taken.  But the argument only presents a compelling reason for the Court to exercise its discretion to award fees incurred after Plaintiff introduced her meritless FWA claim, not before that date.  In fact, when Defendant moved to dismiss the FAC (which contained the prior version of Plaintiff's FWA claim regarding pilot safety), it did not seek dismissal of Plaintiff's FWA claim.  And Defendant's current Motion seeking an award of fees focuses on the frivolity of Plaintiff's FWA claim in the SAC (as well as the fact that Plaintiff changed theories late in the game), but it does not delve into the merit of Plaintiff's prior FWA claim.  In other words, had Plaintiff simply abandoned her original FWA claim (which she essentially did by shifting theories between the FAC and the SAC) without including her new FWA claim in the SAC, Defendant's argument for an award of fees would not be nearly as strong.  Ultimately, the Court has discretion here, and exercising that discretion to award fees incurred since January 9, 2023 (the date the SAC was filed) seems like an appropriate way to exercise that discretion under the circumstances of this case.  *Cf. Blanco*, 2009 WL 2762361, at *1, 4 (finding entitlement but limiting period for which fees would be awarded).

I do recommend, however, only awarding 50% of the reasonable fees Defendant's attorneys have incurred since January 9, 2023.  The reason for recommending 50% is because the SAC essentially presents two types of claims, discrimination claims and retaliation claims (which includes the FWA claim).  As noted above, there does not appear to be any dispute that the retaliation and FWA claims in the SAC were inextricably intertwined.  They were based on the same facts and subject to the same legal analysis.  Further, as the Court's dismissal order makes clear, Plaintiff's FWA claim failed for the exact same reasons as her retaliation claims.

On the other hand, prior to the SAC, the landscape was a bit different.  In the FAC, Plaintiff's FWA claim was based on a different protected activity (complaints regarding pilot

safety and FAA violations). Additionally, Plaintiff's initial Complaint and FAC included FMLA and ADEA claims that were not included in the SAC. Thus, if the Court were to award fees based on all of the reasonable fees Defendant incurred since this case was filed (in August 2021), I agree with the parties that one-third of those reasonable fees would be appropriate. However, given that I find it appropriate to only award fees incurred since the filing of the SAC, an award of 50% of the reasonable portion of such fees makes the most sense given the FWA and retaliation claims, which were inextricably intertwined, accounted for one of the two groups of claims that were brought in the SAC (the discrimination claims being the other group).

Based on my review of Defendant's attorneys' billing records, the four timekeepers for which Defendant seeks fees billed the following hours between January 9, 2023 and September 26, 2023:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Robert S. Turk | 36.8 | $350 | $12,880 |
| Paul Crucet | 286.3 | $260 | $74,438 |
| Thomas Raine | 17.2 | $260 | $4,472 |
| Carolina A. Oquendo | 16.9 | $160 | $2,704 |
| Total | | | $94,494 |

The foregoing hourly rates (which are lower than each timekeeper's standard hourly rate) are clearly reasonable – something Plaintiff does not dispute. Mr. Turk, a shareholder at his firm, has been an attorney for over 45 years. Mr. Crucet has been an attorney for roughly 9 years. He was an associate during the majority of the time that this case was pending but was elevated to shareholder in late 2022 (though Defendant is only seeking the $260 associate rate for all hours that Mr. Crucet billed). Mr. Raine is an associate with more than 3 years of experience. Lastly, Ms. Oquendo is a paralegal who has worked with Mr. Turk for roughly 6 years.

Although Plaintiff does not contest the reasonableness of the requested hourly rates, she does contend that certain hours should be reduced.  Based on my review and consideration of Defendant's attorneys' billing records and the record in this case, I find that nearly all of the hours billed since January 9, 2023 are reasonable.  As discussed above, it is Defendant's burden to adequately document the reasonableness of counsel's hours and to exclude excessive, redundant, and unnecessary hours.  Significantly, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Barnes*, 168 F.3d at 428.  However, Defendant is not the only party with a burden here.  Plaintiff, as the party opposing the Motion, has her own obligations.  *See id.*  "In order for courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'"  *Id.* (quoting *Norman*, 836 F.2d at 1301).

In seeking reductions, Plaintiff relies on the declaration submitted by her fee expert, Alan Danz.  *See* [DE 129-1].  Plaintiff and her fee expert raise a few arguments regarding the reasonableness of the hours Defendant's attorneys billed, and they highlight entries that the contend are objectionable.  The arguments Plaintiff raises include: (1) certain entries contain block-billing; (2) the time spent on Defendant's motion for summary judgment (114.8 hours) was excessive; (3) the time spent preparing for and attending Plaintiff's deposition (91.7 hours) was excessive; (4) the time spent preparing Defendant's CEO for his deposition (53.6 hours) was excessive; (5) certain other entries contain excessive or duplicative time; and (6) Mr. Turk's supervision over Mr. Crucet should have decreased after Mr. Crucet became a shareholder but did

not.[11]   Overall, Plaintiff's expert asserts that at least 249.62 of the hours billed were excessive, redundant, or otherwise unnecessary.

As an initial matter, it is wholly unclear how Plaintiff's expert calculated the 249.62 figure (among other things, Defendant's attorneys billed in increments of 0.1).   Additionally, when Plaintiff's expert highlighted time entries as allegedly excessive or objectionable, he did not specify whether he contends such entries should be reduced (and, if so, by how much) or wholly excluded.   Regarding the arguments set forth in the preceding paragraph, the time spent related to depositions need not be addressed given that the depositions occurred in late 2022, and I am only recommending awarding fees incurred since January 9, 2023.   As to the issue of block-billing, a handful of entries that Plaintiff's expert highlighted contain a comment raising a block-billing objection.   All block-billing objections appear to relate to entries prior to January 9, 2023.   At any rate, with the exception of one *de minimis* entry for 0.4 hours (prior to 2023), I do not agree that the entries Plaintiff's expert has tagged as block-billing entries do in fact contain block billing. That is because the entries pertain to related and intertwined tasks, not distinct tasks.   *See Zendejas v. Redman*, No. 15-81229-CIV, 2019 WL 1429403, at *1 (S.D. Fla. Mar. 27, 2019) ("[T]he mere fact that an attorney has included more than one task in a single billing entry is not, in itself, evidence of [impermissible] block-billing. When those tasks are intertwined, including a thorough description of the activities performed clarifies, rather than obscures, the record." (quoting *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1312 (S.D. Fla. 2009))).

With respect to Plaintiff's argument that Mr. Turk spent too much time supervising Mr. Crucet after Mr. Crucet was elevated to shareholder, Plaintiff and her expert recognize that "a

---

[11] The arguments regarding Defendant's motion for summary judgment (no. 2) and certain entries containing excessive or duplicative time (no. 5) are incorporated into my discussion below regarding hours billed by individual timekeepers.

certain amount of partner supervision over an associate is to be expected," but they argue that Mr. Turk's level of supervision did not change after Mr. Crucet's promotion.  [DE 129-1] at 5, ¶ 13. Ordinarily, I would agree that partner supervision over Mr. Crucet's work should have substantially decreased following Mr. Crucet's elevation to shareholder.  But here, Defendant is only seeking a $260 rate for all of Mr. Crucet's work, including work he performed as a shareholder.[12]  Therefore, even if supervision over Mr. Crucet's work remained unchanged after he became a partner, I do not find that to be unreasonable here given that Defendant is only seeking a modest associate hourly rate for all of Mr. Crucet's time.  At any rate, the billing records do appear to show less supervision over Mr. Crucet's work following his elevation to shareholder (or at least since the filing of the SAC).  Prior to the filing of the SAC, Mr. Crucet billed 574.1 hours, and Mr. Turk billed 188.1 hours (roughly one-third of the hours Mr. Crucet billed).  Since the filing of the SAC, Mr. Crucet billed 286.3 hours, and Mr. Turk billed 36.8 hours (under 13% of the hours Mr. Crucet billed).  Thus, Plaintiff's argument regarding the level of Mr. Turk's supervision over Mr. Crucet after Mr. Crucet became a shareholder is unavailing.

Regarding the time billed by the four timekeepers at issue after the filing of the SAC, Plaintiff has highlighted entries billed by Mr. Turk, Mr. Crucet, and Ms. Oquendo, apparently indicating that it finds such entries to be excessive, duplicative, or otherwise unreasonable (though it is unclear to what extent).  *See* [DE 129-1].  However, Defendant does not appear to object to any of the 17.2 hours that Mr. Raine billed following January 9, 2023, and I find those hours to be reasonable.  I also find the 16.9 hours Ms. Oquendo billed since January 9, 2023 to be reasonable. Plaintiff's expert highlighted 12.7 of the 16.9 hours because the 12.7 hours (all from July 2023)

---

[12] Although Mr. Crucet's time was billed out at $350 per hour for a few months, Defendant is only seeking a $260 rate for Mr. Crucet – in connection with the instant Motion – for all hours that Mr. Crucet billed in this case.

pertained to Defendant's motion for summary judgment (they are part of the 114.8 summary-judgment hours Plaintiff's expert calculated).  However, I have reviewed the 12.7 hours Ms. Oquendo billed in July 2023 and find those hours to be reasonable.  The work she completed in July 2023 was largely (if not completely) distinct from the work being completed by the attorneys. Thus, the 12.7 hours she billed in July 2023, as well as the other 4.2 hours she billed following the filing of the SAC (which Plaintiff does not appear to object to) are all reasonable.

As to Mr. Turk and Mr. Crucet, most – though not all – of the entries that Plaintiff's expert indicates are objectionable (by highlighting such entries in the billing records and sometimes including a brief comment) pertain to Defendant's motion for summary judgment.  Regarding the other highlighted entries (meaning the entries after January 9, 2023 aside from the 114.8 summary-judgment hours) I find that the time billed is reasonable, and not unreasonably excessive or duplicative, with two exceptions.  First, I find it unreasonable for Plaintiff to have to compensate Defendant for Mr. Crucet's 0.5-hour entry on February 23, 2023 for preparing a revised litigation budget.  Second, there is an obvious issue with Mr. Crucet's 17-hour entry on February 16, 2023. Defendant acknowledges that the number of hours billed in that entry is a typographical error, and consequently, states it has reduced the entry by $1,783.22.  [DE 127] at 18.  But Defendant never indicates the number of hours that should be included in the entry, and the dollar amount of the reduction makes it difficult to determine exactly what portion of the 17 hours Defendant excluded. Back to how to handle the 17-hour time entry in a moment.

Regarding the 114.8 summary-judgment hours that Plaintiff's expert highlighted, that figure includes 12.7 hours of Ms. Oquendo (which are discussed above), 6.5 hours of Mr. Turk, and 95.6 hours of Mr. Crucet.  The 114.8-hour figure appears to pertain to time spent in connection with preparing Defendant's motion for summary judgment [DE 101], statement of facts [DE 102],

and appendix, declarations, and other exhibits [DE 103, 103-3, 103-5].  Plaintiff notes that additional time was also spent on research and transcript review.

Mr. Crucet's 95.6 hours appear to have been primarily spent taking the lead on drafting Defendant's motion for summary judgment, statement of facts, and declarations.  Mr. Turk's 6.5 hours were primarily spent on revising those documents.  In opining that these summary-judgment-related hours are excessive, Plaintiff's expert states: "While I recognize that the preparation of a summary judgment motion is often quite time consuming, the hours expended here appears excessive. Consequently, the Court should consider the hours billed as excessive and reduce them accordingly."  [DE 129-1] at 5 ¶ 14.  Plaintiff reiterates her expert's statement in her Response. But neither Plaintiff nor her expert explain why the hours are excessive or *how* the Court should "reduce them accordingly."  At face value, 114.8 hours does sound somewhat high, but neither Plaintiff nor her expert provide enough rationale to show why the number is unreasonable or excessive under the circumstances of this case.  And having reviewed the filings related to the 114.8 hours, they are well-done and quite extensive.  Moreover, Defendant's summary judgment motion and statement of facts actually exceeded (with the Court's permission) the Local Rules' page limits for such filings by 10 pages each.  At any rate, I cannot find that Mr. Crucet's 95.6 hours are unreasonably excessive.  Nor are Mr. Turk's 6.5 hours.  In fact, the small number of hours he spent in connection with the motion for summary judgment and statement of facts underscores the fact that Mr. Turk did not spend an unreasonably excessive amount of time supervising Mr. Crucet during this period of time (when Mr. Crucet was a partner).

The last remaining issue is what to do with Mr. Crucet's February 16, 2023 entry for 17 hours (which is included in the 286.3 hours Mr. Crucet has billed since the SAC was filed).  I recommend excluding the entire entry.  Defendant had the burden in the first instance to document

the hours that its attorneys reasonably expended in connection with the litigation, and it has not

met its burden with respect to the 17-hour entry.  Moreover, while I find that the other hours billed

since January 9, 2023 do not appear to be unreasonably excessive or duplicative, to the extent any

such hours are, excluding the entirety of the 17-hour entry should more than compensate for any

such limited excess or duplication.  In other words, excluding the 17-hour entry will aid in

achieving rough justice, even if not auditing perfection.

For the foregoing reasons, I find that the four timekeepers for which Defendant seeks to

recover fees have reasonably billed the following hours since January 9, 2023 (the following chart

excludes Mr. Crucet's entries for 17 hours and 0.5 hours that are discussed above):

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Robert S. Turk | 36.8 | $350 | $12,880 |
| Paul Crucet | 268.8 | $260 | $69,888 |
| Thomas Raine | 17.2 | $260 | $4,472 |
| Carolina A. Oquendo | 16.9 | $160 | $2,704 |
| Total | | | $89,944 |

For the reasons explained above, Defendant should be awarded 50% of the $89,944 amount.  Thus,

Defendant should be awarded $44,972 in attorneys' fees.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 127]

be **GRANTED IN PART and DENIED IN PART**, and that the Court award Defendant

attorneys' fees in the amount of **$44,972**.

The parties will have fourteen (14) days from the date of being served with a copy of this

Report and Recommendation within which to file written objections, if any, with the Honorable

Darrin P. Gayles, United States District Judge.  Failure to timely file objections shall bar the parties

from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar

the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this

Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

      **DONE AND SUBMITTED** in Fort Lauderdale, Florida this 17th day of June 2024.

                                              **Jared M. Strauss**
                                        **United States Magistrate Judge**